John A. and Julia Jones MATTHEWS

v.

UNITED STATES of America.

Civ. A. No. 1972.

United States District Court
N. D. Texas,
Abilene Division.

Jan. 4, 1963.

---

4. See, Due Process Requirements of Definiteness in Statutes, 62 Harv.L.Rev. 77, 80–81 (1948).

T. J. McMahon and R. M. Wagstaff, Abilene, Tex., and James F. Hoge, Jr., Fort Worth, Tex., for plaintiffs.

Lorence L. Bravenec, Dept. of Justice, Tax Division, Washington, D. C., for defendant.

BREWSTER, District Judge.

This action was brought under the provisions of Title 28 U.S.C.A. § 1346(a) (1) by John A. Matthews and wife, Julia Jones Matthews, for a refund of income taxes paid on $1,000,000.00, received by them as consideration for the sale of an oil payment during the calendar year 1955.

The questions presented are whether the proceeds of the sale of the oil payment out of her entire royalty interest were taxable as a capital gain rather than as ordinary income, and, if not, whether the ordinary income should be considered as having been realized in 1956, 1957, 1958 and 1959, the years of the payout of the oil payment, rather than in 1955.

By an instrument dated December 30, 1955, Mrs. Matthews, joined by her husband, in consideration of $1,000,000.00 cash, conveyed to F. & M. Charities "A" Inc. her entire interest in the oil, gas, casinghead gas, gasoline and other mineral royalties in four tracts of land belonging to her separate estate located in the Salt Creek Field in Kent County, Texas. The transfer was in the form of a conveyance, with a habendum clause and a general warranty. Cancelled documentary stamps in the amount of $1,100.00 were affixed to the instrument at the time of its delivery. The following provisions are quoted from the conveyance:

"This grant shall run, and the rights, titles, and privileges hereby granted shall extend to Grantee herein, and to Grantee's successors and assigns, for a sufficient period of time to pay said Grantee said amount of One Million ($1,000,000.00) Dollars over and above all amounts paid or deducted on account of taxes or assessments levied upon or against or measured by the production of oil or gas, plus an amount equivalent to interest at the rate of six (6%) per cent per annum calculated monthly on the diminishing unpaid balance of said sum of One Million ($1,000,000.00) Dollars.

"When Grantee herein, its successors and assigns, shall have received the said net sum of One Million ($1,000,000.00) Dollars plus an amount equivalent to interest at the rate of six (6%) per cent per annum calculated monthly on the diminishing unpaid balance of said sum, then the title to the estate and the interest herein conveyed and assigned shall revert to Grantor herein, her heirs or assigns."

"Throughout the effective life of this grant, the undersigned Grantor,

for herself, her heirs or assigns, covenants and agrees:

"(1) to pay or cause to be paid, before delinquent, all lawful taxes assessed against the undersigned's royalty interest above described;

"(2) to pay or cause to be paid, before delinquent, all lawful taxes assessed against the interest herein conveyed to F. & M. Charities "A" Inc., a corporation, and to indemnify and save the said F. & M. Charities "A" Inc., a corporation, its successors and assigns, harmless from any liability on account of such taxes:"

The instrument denied the grantee the right to participate in the making of any future oil, gas and mineral leases and in any bonus or rental paid in connection therewith. The royalty interest conveyed did include any production that might be realized from development under any such future leases.

The following allegations in plaintiffs' complaint regarding the transfer were admitted by the defendant:

" * * * The payment of the stated sum was unconditional and irrevocable whether or not oil continued to be produced from the properties transferred. There was no agreement or personal obligation on the part of plaintiffs, or either of them, to return all or any part of the sum received by them from the purchaser under any condition, nor was there any guaranty by plaintiffs, or either of them, that purchaser would receive the sum stated out of production from the properties. The plaintiffs have never been engaged in the business of buying and selling oil, gas and mineral leases or oil, gas and mineral royalties, or any other form of interest in oil, gas or minerals."

F. & M. Charities "A" Inc. was organized and operated for charitable purposes. Its net assets were relatively small at the time it bought the oil payment, and it had no money of its own to make the purchase from the Matthews. The method used in this transaction was its primary source of raising money.

While the Matthews oil payment provided for interest at 6% per annum to the F. & M. Charities "A" Inc., the Charity got a loan of $1,000,000.00 from an Abilene bank at 5% with which to pay the Matthews the purchase price. The 1% interest was the income of the Charity. The loan was made on a promissory note executed by the Charity, with the oil payment as the only collateral security.

The loan of the $1,000.000.00 by the Abilene bank in this case was participated in by one of the large Dallas banks. It was supported by a petroleum engineer's evaluation report from the oil department of the Dallas bank, which estimated that the $1,000.000.00 plus 6% interest would be paid out in about forty-five months. It did pay out in August, 1959.

While there is always some hazard connected with the recovery of money advanced for an oil payment, the payout in the Matthews transaction could be and was determined with sufficient accuracy for it to be in fact a mere assignment of future income.

The Salt Creek Field had an established and good record for producing oil. It was large enough that it included a number of other tracts besides those belonging to Mrs. Matthews. The Field was operated on a unitized basis, and her proportion of the entire production was 2.72%. The Field had met its allowable for the two years prior to the sale of the oil payment. The production in number of barrels of oil from the entire Field during the years 1954–1961, both inclusive, was:

| Year | Barrels of Oil |
| --- | --- |
| 1954 | 3,363,149 |
| 1955 | 4,059,306 |
| 1956 | 3,986,028 |
| 1957 | 3,589,634 |
| 1958 | 2,801,776 |
| 1959 | 3,873,834 |
| 1960 | 3,275,360 |
| 1961 | 3,181,566 |

The gross price per barrel paid for oil produced from the Salt Creek Field, without deductions for production tax, during the period from December, 1954 through April, 1962, was:

| | |
|---|---|
| December 1954 through December 1956 | − $2.89 |
| January 1957 through November 1957 | − $3.13 |
| December 1957 through November 1958 | − $3.15 |
| December 1958 through November 1959 | − $3.07 |
| December 1959 through March 1962 | − $3.00 |
| April 1962 | − $2.99 |

The plaintiffs filed their joint individual income tax return for the year 1955, in which the $1,000,000.00 in question was reported as a long term capital gain from the sale of a capital asset. They acted in good faith upon the advice of tax counsel. When the return was audited by the Internal Revenue Service, a deficiency in income taxes was determined as a result of treatment of the $1,000,000.00 as ordinary income received in the calendar year 1955. The plaintiffs paid the additional tax on such amount under protest, and timely filed their claim for refund. The claim was rejected and the plaintiffs duly instituted this suit for the refund.

It is apparent that the sale of this oil payment was made on the good faith belief of the plaintiffs and their tax counsel that under the rule then recognized in the Fifth Circuit, as declared by Caldwell v. Campbell, 5 Cir., 1955, 218 F.2d 567, they could thereby legitimately lessen their tax load. Cases decided two years later by the same Circuit Court confirmed the basis for that belief. Scofield v. O'Connor, 5 Cir., 1957, 241 F.2d 65; Commissioner v. Weed, 5 Cir., 1957, 241 F.2d 69; Commissioner v. P. G. Lake, Inc., 5 Cir., 1957, 241 F.2d 71; Fleming v. Commissioner, 5 Cir., 1957, 241 F.2d 78, 79; and Commissioner v. Wrather, 5 Cir., 1957, 241 F.2d 84.

The Supreme Court granted writs of certiorari in each of the last five cases, consolidated them for argument, and disposed of them in one opinion reversing the judgments of the Court of Appeals. Commissioner v. P. G. Lake, Inc., et al., 356 U.S. 260, 78 S.Ct. 691, 2 L.Ed.2d 743, rehearing denied 356 U.S. 964, 78 S.Ct. 991, 2 L.Ed.2d 1071. It is the opinion of this Court that the decision in those cases settles each of the questions raised in the present case adversely to the plaintiffs.

The plaintiffs contend in their written brief that the Lake case and the other ones decided in connection therewith are distinguishable on the ground that they "involved carved out and *not* retained, accepted or reserved production payments," while the transaction in this case was a sale and conveyance of the taxpayer's entire royalty interest with provision for reversion on a condition subsequent. The Court does construe the opinion in the Lake case as being intended to give different treatment in cases where the payout of an oil payment is to be derived from the entire oil, gas or mineral interest of the grantor, from those where such payout is to come from only a portion of the grantor's interest, if there is no legitimate distinction in the other important facts.

The plaintiffs cite Foster v. U. S., D.C., La., 207 F.Supp. 104, as providing an escape from the rule in the Lake case. That case is not applicable for two reasons: first, the oil payment sold was a separate interest in the realty retained out of a prior transaction; and second, the oil payment was on land that was not then producing oil, and the payout could not be determined with sufficient accuracy to constitute a mere assignment of future income.

In view of the thorough discussion in the above cited opinions of the Court of Appeals and of the Supreme Court of both sides of the issues now under consideration, and of the further fact that it appears that the rule is now well settled, it is felt that nothing can be accomplished by further laboring the matter here.

The $1,000.000.00 received by the plaintiffs for the sale of the oil payment in question was required to be treated as ordinary income received in the calendar year 1955, subject, however, to the statutory depletion allowance.

This opinion will serve as the findings of fact and conclusions of law under the provisions of Rule 52, Federal Rules of Civil Procedure.

Judgment will be entered for the defendant in accordance with these findings and conclusions.